UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

v.

ALEXANDER PIANO, JR.

Case No. 1:16-cr-205-JPH-MJD -01

ORDER ON MOTIONS FOR
SENTENCE REDUCTION UNDER
18 U.S.C. § 3582(c)(1)(A)
(COMPASSIONATE RELEASE)

Upon motions of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motions are:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cr-00205-JPH-MJD |
| | ) | |
| ALEXANDER PIANO, JR., | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Alexander Piano, Jr. has filed motions seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). Dkts. 91, 95. Mr. Piano seeks immediate release from incarceration.[1]  For the reasons explained below, his motions are **DENIED**.

I.   **Background**

In 2017, Mr. Piano pled guilty to one count of possession with intent to distribute 500 grams or more of methamphetamine (mixture), in violation of  21 U.S.C. § 841(a)(1) (Count 1) and one count of using and/or carrying a firearm during and in relation to a drug trafficking crime,

---

[1] Though it is not clear, it appears that Mr. Piano may also be requesting to serve the remainder of his custodial term on home confinement. Pursuant to statute, the location of a prisoner's confinement is the sole province of BOP, and its placement decisions are "not reviewable by any court." 18 U.S.C. § 3621(b). The Court therefore does not have the authority to order the remainder of Mr. Piano's sentence to be served on home confinement. *See United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) (district court lacks authority to order transfer to home confinement); *United States v. Council*, No. 1:14-CR-14-5, 2020 WL 3097461, at *7 (N.D. Ind. June 11, 2020); *United States v. Neeley*, No. 1:14-cr-00096, 2020 WL 1956126, at *2 (S.D. Ind. Apr. 23, 2020). Instead, in accordance with § 3582(c)(1)(A), the Court considers whether to reduce Mr. Piano's sentence to time served. *See United States v. Millbrook*, No. 20-2147, 2021 WL 960743, at *2 (7th Cir. Mar. 15, 2021) (finding no error when district court failed to discuss defendant's alternative request for transfer to home confinement because the court had no authority to grant the request under § 3582, which authorizes only sentence "reductions").

in violation of 18 U.S.C. § 924(c) (Count 2). Dkts. 75, 77. According to the Presentence Investigation Report, the circumstances of Mr. Piano's arrest were as follows: Police officers discovered Mr. Piano and other individuals stranded on the side of the highway, with two vans that had run out of gas. Dkt. 61. Upon questioning, Mr. Piano acknowledged that he had a Lorcin .380 caliber pistol on him, and after a search of Mr. Piano's van, officers found methamphetamine, two electronic scales, a 100 gram weight, a lockbox, and a 12 gauge Riot sawed-off shotgun loaded with one slug in the chamber and two slugs in the magazine. Inside of the lockbox was methamphetamine, syringes, miscellaneous identification cards, credit cards, gift cards, and other items. The presumed methamphetamine bagged weight was 1,022 grams (1.022 kilograms). The Court sentenced Mr. Piano to 180 months of imprisonment (120 months on Count 1 and 60 months on Count 2, consecutive to Count 1). Dkts. 75, 77. The Court also imposed a 5-year term of supervised release. *Id*. The Bureau of Prisons ("BOP") lists Mr. Piano's anticipated release date (with good-conduct time included) as July 17, 2028.

Mr. Piano is 50 years old. He is currently incarcerated at FCI Fairton in Fairton, New Jersey. As of May 14, 2021, the BOP reports that no inmates and 2 staff members at FCI Fairton have active cases of COVID-19; it also reports that 258 inmates at FCI Fairton have recovered from COVID-19 and that 1 inmate at FCI Fairton has died from the virus. https://www.bop.gov/coronavirus/ (last visited May 17, 2021). The BOP also reports that 513 inmates and 152 staff members at FCI Fairton have been fully inoculated against COVID-19. *Id*. That is, nearly 60 percent of the inmates at FCI Fairton have been fully inoculated against COVID-19. *See* https://www.bop.gov/about/statistics/population_statistics.jsp (showing that as of May 17, 2021, the BOP reports that FCI Fairton has an inmate population of 877).

Mr. Piano filed a pro se motion for compassionate release. Dkt. 91. The Court appointed counsel. Dkt. 92.  Appointed counsel filed an amended motion for compassionate release, dkt. 95, the United States filed a response in opposition, dkt. 99, and Mr. Piano filed a reply, dkt. 100. Thus, the motions are now ripe for decision.

## II.     Discussion

Mr. Piano seeks immediate release based on "extraordinary and compelling reasons" as set forth in 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 95. Specifically,  he contends that his underlying medical conditions (hypertension, hyperlipidemia, pre-diabetes and obesity), which make him more susceptible to severe complications from COVID-19, combine with the BOP's inability to control COVID-19 outbreaks in their facilities to establish extraordinary and compelling reasons to reduce his sentence to time served. *Id.* In response, the United States argues that Mr. Piano has not established extraordinary and compelling reasons to grant compassionate release because he has already contracted COVID-19 and recovered without having any symptoms. Dkt. 99. The United States further argues that Mr. Piano would pose a danger to the community if released, and the sentencing factors in 18 U.S.C. § 3553(a) do not favor release. *Id.*

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018).  The amended version of the statute states:

[T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,[2] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id*. Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger

---

[2] The United States concedes that Mr. Piano has exhausted his administrative remedies. Dkt. 99 at 5.

to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not

curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction;[3] (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

Mr. Piano asks the Court to exercise its broad discretion to find an extraordinary and compelling reason warranting release in this case because of his underlying medical conditions. Although Mr. Piano purports to have a condition that increases his risk of experiencing severe symptoms from COVID-19, *see* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 16, 2021) (identifying obesity as a condition that can make you more likely to get severely ill from COVID-19), he tested positive for COVID-19 on January 4, 2021. Dkt. 99-1. According to his medical records, Mr. Piano remained asymptomatic throughout his infection. Dkt. 99-2. Thus, he has not shown extraordinary and compelling reasons warranting a sentence reduction. *See, e.g.*, *United States v. Weatherspoon*,

---

[3] In keeping with the Seventh Circuit's instruction in *Gunn*, 980 F.3d at 1180-81, the Court has considered the rationale provided by the warden in denying Mr. Piano's administrative request for relief. The warden evaluated Mr. Piano's request in July 2020, several months before Mr. Piano contracted COVID-19. Dkt. 91-1. Thus, the warden's decision provides little guidance to the Court's analysis.

No. 2:11-cr-9-JMS-CMM-07, dkt. 894 (S.D. Ind. July 7, 2020) (finding no extraordinary and compelling reason where defendant had conditions putting him at risk for severe COVID-19 symptoms and had been hospitalized after testing positive for COVID-19, but had since recovered); *United States v. Wyatt*, No. 3:17-cr-11-RLY-MPB-02, dkt. 165 (S.D. Ind. Sept. 3, 2020) (finding no extraordinary and compelling reason where defendant had conditions putting him at risk for severe COVID-19 symptoms and had tested positive for COVID-19 but remained asymptomatic); *United States v. Young*, No. 3:15-cr-38-RLY-CMM-03, dkt. 139 (denying motion to reconsider and finding no extraordinary and compelling reason warranting release where defendant claimed to be experiencing chest pains and difficulty breathing several months after his COVID-19 diagnosis because the symptoms were not severe or debilitating).

Any potential concern about reinfection in the future does not change the result. The Court recognizes that FCI Fairton previously experienced a serious outbreak of COVID-19. Nonetheless, any reliance on the possibility that Mr. Piano will be reinfected and suffer severe symptoms is speculative. *See*     https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html (last visited May 16, 2021) ("Cases of reinfection of COVID-19 have been reported but are rare."). To date, this Court has declined to find extraordinary and compelling circumstances warranting a sentence reduction when a defendant has recovered from COVID-19—even when that defendant has risk factors for severe symptoms. *See*, *e.g.*, *Wyatt*, No. 3:17-cr-11-RLY-MPB-02, dkt. 165 (S.D. Ind. Sept. 3, 2020); *United States v. Gevirtz*, No. 1:17-cr-68-RLY-MJD-01, dkt. 68 (S.D. Ind. Sept. 14, 2020); *United States v. Young*, No. 1:10-cr-3-SEB-DML-17, dkt. 1540 (S.D. Ind. July 27, 2020). The fact that significant portions of the inmate population in the BOP are now vaccinated—including a majority of the inmates at FCI Fairton—only underscores the speculative nature of any concern about reinfection.

8

Given the Court's determination that Mr. Piano has not shown extraordinary and compelling reasons to justify his release, whether the 3553(a) factors weigh in favor of his release need not be discussed at length. Nonetheless, the Court concludes that they weigh against release. In his favor, Mr. Piano has not had any disciplinary infractions during his more than 5 years of imprisonment. Dkt. 95-5. While incarcerated, Mr. Piano has completed the drug education program, a building repair apprenticeship and a financial education course. Dkt. 95-4. Mr. Piano reports that at the prison, he is employed as a painter and performs very important tasks. Dkt. 95 at 19. If released, Mr. Piano states that he will live with his fiancée, who will provide him with the emotional and financial support he needs as he transitions back into society. *Id.* at 20.

Weighing against him, Mr. Piano was transporting a substantial amount of methamphetamine from Georgia when he was arrested. Mr. Piano also has many felony convictions in his criminal history including: (1) theft in 1991; (2) two counts of theft in 1996; (3) possession of a firearm by a serious violent felon in 2003; (4) possession of a firearm by a serious violent felon in 2006; and (5) two counts of battery in 2010. Dkt. 61. When he was arrested for the instant offenses, Mr. Piano was still on parole for his battery convictions. Mr. Piano also has more than a dozen misdemeanor convictions as an adult. *Id.* The BOP rates Mr. Piano as a high risk for recidivism and gives him a medium security classification. Dkt. 95-4. Finally, Mr. Piano has only served 44 percent of his sentence and is not scheduled to be released for more than 7 years. Under these circumstances, the Court cannot conclude that the § 3553(a) factors favor release.

In light of these considerations, the Court cannot find that any risk Mr. Piano faces from COVID-19 warrants releasing him from incarceration at this time. *See United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) (affirming denial of motion for compassionate release where

district court found that § 3553(a) factors weighed against release despite COVID-19 risk because defendant committed serious offense and had only served one-third of sentence); *United States v. Ebbers*, No. S402-CR-11443VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating a motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence).

###### III.    Conclusion

For the reasons stated above, Mr. Piano's motions for compassionate release, dkt. [91] and [95], are **denied**.

**SO ORDERED.**

Date: 5/21/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel